UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

FEB - 5 2013

CLERK, US DISTRICT COURT
NORFOLK, VA

PEOPLE EXPRESS AIRLINES, INC.

A Delaware Corporation

     Plaintiffs,

v.                           Civil Action No. 4:12cv61

200 KELSEY ASSOCIATES, LLC

A New Jersey Limited Liability Company

Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant 200 Kelsey Associates, LLC's ("200 Kelsey") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to dismiss in part pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike impertinent matter pursuant to Federal Rule of Civil Procedure 12(f). After examining the Complaint, 200 Kelsey's motion to dismiss and the associated memoranda, the Court finds that the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The matter is therefore ripe for decision. For the reasons set forth below, the Court **GRANTS** 200 Kelsey's motion to dismiss pursuant to Rule 12(b)(2). Because the Court finds it lacks personal

1

jurisdiction, it does not reach 200 Kelsey's alternative ground for dismissal pursuant to Rule 12(b)(6) nor its motion to strike pursuant to Rule 12(f).

## I. FACTUAL HISTORY[1]

Plaintiff People Express Airlines, Inc. d/b/a PEOPLExpress Airlines or PEOPLExpress ("PEOPLExpress") is a Delaware Corporation with a principle place of business in Newport News, Virginia. Defendant Kelsey is a limited liability company organized under the laws of the State of New Jersey with its principal place of business in New York. The suit seeks a declaration of the parties' rights in certain trademarks and judgment against 200 Kelsey for cybersquatting and unfair trade practices.

PEOPLExpress is a corporation that formed in the summer of 2011 with the intent to begin providing airline passenger service in Virginia under the "famous" brand and marks related to "PEOPLE EXPRESS," including the word mark "PEOPLEXPRESS," the combination mark "PEOPLExpress," and a design mark depicting the profiles of two faces. The "PEOPLE EXPRESS" brand ("Brand") and related marks ("Marks") were previously used for passenger

---

[1] The facts recited here are drawn from Plaintiff's Complaint and are assumed true for the purpose of deciding the motion currently before the Court. They are not to be considered factual findings for any purpose other than consideration of the pending motion. See TomTom, Inc. v. AOT Sys. GmbH, No. 1:12cv528, 2012 WL 4457730, at *1 (E.D. Va. Sept. 14, 2012).

flight service by another company, also operating under the name
PEOPLExpress, from 1981 until 1987, when that company ceased
service after becoming part of another airline. Plaintiff
PEOPLExpress claims no connection to the former PEOPLExpress.
Plaintiff PEOPLExpress claims only that it intends to make use
of the Brand and associated Marks made "famous" by the prior
airline.

Plaintiff PEOPLExpress asserts that it intended to commence
passenger service in the summer of 2012 and that in the summer
of 2011 it began taking several actions in preparation for such
service, including performing marketing and accounting studies
of the Brand. PEOPLExpress claims that it has invested
significant time and money in extensive preparations to use the
Brand in commerce. Additionally, on September 22, 2011,
PEOPLExpress filed an intent-to-use application with the U.S.
Trademark Office. This application and the circumstances
surrounding it give rise to the instant litigation.

Specifically, on January 18, 2012, the U.S. Trademark
Office informed PEOPLExpress that it could not approve
PEOPLExpress's intent-to-use application, because 200 Kelsey
already held a prior-pending intent-to-use application for the
mark "PEOPLE EXPRESS," filed on September 16, 2009.
PEOPLExpress claims that 200 Kelsey's pending intent-to-use
application is the second such application that 200 Kelsey has

filed with respect to the "PEOPLE EXPRESS" mark, and that 200 Kelsey filed this second application five days before the first application was to become abandoned due to 200 Kelsey's failure to file a statement of use. Thus, 200 Kelsey has allegedly kept the "PEOPLE EXPRESS" mark unavailable for registration since September 21, 2005, the date it filed its first intent-to-use application.

With respect to 200 Kelsey's second intent-to-use application, the U.S. Trademark office issued a Notice of Allowance on May 17, 2011. 200 Kelsey then filed for a six-month extension of time to file its statement of use on November 17, 2011, which extension was granted on November 19, 2011. PEOPLExpress claims that further extensions of time might be granted, effectively suspending any further action on 200 Kelsey's intent-to-use application until May 17, 2014, at the latest.

PEOPLExpress alleges that 200 Kelsey has a practice of registering trademark applications without having the intent to use the marks in commerce, and that 200 Kelsey continually extends its registrations so it may demand licenses from those, such as PEOPLExpress, who do intend to use the marks in commerce. PEOPLExpress claims that 200 Kelsey aims "to extort money" for marks it has never used and in which it has no legitimate rights. PEOPLExpress further alleges that, in

4

addition to filing fraudulent trademark applications, 200 Kelsey registers domain names for marks in which it has no ownership or interest, and does not intend to use in any way, in an effort to "hold" the domain name. PEOPLExpress complains that, in accordance with this practice, 200 Kelsey registered the domain name www.peopleexpressairline.com on July 26, 2005 and the domain name www.peopleexpressair.com on November 23, 2009.

Sometime after learning of 200 Kelsey's pending intent-to-use application, PEOPLExpress contacted 200 Kelsey regarding the mark. PEOPLExpress claims that 200 Kelsey refused to consider any agreement involving its application other than a "license" of the mark to PEOPLExpress pending the resolution of such application. PEOPLExpress complains that such a license agreement is improper because it would create in 200 Kelsey controlling rights to the mark where none currently exist.

## II. PROCEDURAL HISTORY

PEOPLExpress initiated the instant action on April 26, 2010, when it filed a three-count Complaint against 200 Kelsey seeking a declaratory judgment (Count I) and alleging that 200 Kelsey cyber squatted in violation of the Lanham Act (Count II) and engaged in unfair trade practices (Count III).

PEOPLExpress specifically requests that the court (1) declare that PEOPLExpress's use of the "PEOPLE EXPRESS" mark does not infringe on the rights of 200 Kelsey; (2) declare that

200 Kelsey has no right, title, or interest in the marks or domain names involving the words PEOPLE and EXPRESS; (3) issue preliminary and permanent injunctions restraining 200 Kelsey from pursuing any existing or future trademark involving the names or logos associated with PEOPLExpress; (4) order 200 Kelsey to assign to PEOPLExpress all rights to any and all websites or domain names; and (5) order 200 Kelsey to abandon any and all trademark applications for any mark including the words "PEOPLE" and "EXPRESS" and any other mark associated with PEOPLExpress. PEOPLExpress also seeks actual and punitive damages, costs, and attorneys' fees.

On May 18, 2012, 200 Kelsey filed its motion to dismiss and a brief supporting such motion. ECF Nos. 5-6. PEOPLExpress filed its opposition brief on June 5, 2012. ECF No. 9. 200 Kelsey filed its reply brief on June 11, 2012. ECF No. 10. Therefore, 200 Kelsey's motion to dismiss is fully briefed and ripe for this Court's consideration.

### III. DISCUSSION

If the Court lacks personal jurisdiction over 200 Kelsey, dismissal of all claims is appropriate.[2] Therefore, the Court

---

[2] 200 Kelsey has filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). PEOPLExpress responds by arguing only that this Court has personal jurisdiction over 200 Kelsey in this action. PEOPLExpress does not argue, in the alternative, that a transfer of venue pursuant to 28 U.S.C. § 1406 is appropriate, should the Court find that it lacks such jurisdiction. Failure to raise a claim that transfer of venue is appropriate constitutes a

begins by considering 200 Kelsey's Motion to Dismiss Pursuant to Rule 12(b)(2). Because the Court finds it lacks personal jurisdiction over 200 Kelsey, it does not reach 200 Kelsey's alternative ground for dismissal nor its motion to strike.

## A. Standard of Review

Rule 12(b)(2) permits a party to request that a court dismiss an action on the ground that the court lacks personal jurisdiction over that party. Fed. R. Civ. P. 12(b)(2). When a defendant challenges the court's personal jurisdiction over him, the plaintiff bears the burden of proving that the court possesses personal jurisdiction by a preponderance of the evidence. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). In cases where "the defendant provides evidence which denies facts essential for jurisdiction, 'the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence.'" Colt Def., L.L.C. v. Heckler & Koch Def., Inc., No. 2:04cv258, 2004 U.S. Dist. LEXIS 28690, at *29-30 (E.D. Va. Oct.

---

waiver of such claim. Jenson v. Klayman, 115 Fed. App'x 634, 635-36 (4th Cir. 2004). Additionally, although the Court has discretion to transfer venue in the interest of justice, there are no facts before the Court suggesting an appropriate alternative venue or that transfer is in the interest of justice. See 28 U.S.C. § 1406(a).

22, 2004) (quoting <u>Indus. Carbon Corp. v. Equity Auto & Equip.</u> <u>Leasing Corp.</u>, 737 F. Supp. 925, 926 (W.D. Va. 1990)).

When deciding the question of its jurisdiction over a party, the Court may rule "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint." <u>Combs</u>, 886 F.2d at 676. In that context, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." <u>Id.</u> In evaluating a plaintiff's prima facie showing, "a district court may look to both plaintiff and defendant's proffered proof." <u>PBM Prods. v. Mead</u> <u>Johnson Nutrition Co.</u>, No. 3:09cv269, 2009 U.S. Dist. LEXIS 93312, at *4 (E.D. Va. Sept. 29, 2009) (citing <u>Mylan Labs</u>, 2 F.3d at 62). However, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." <u>Combs</u>, 886 F.2d at 676. In any motion pursuant to Rule 12(b)(2), the ultimate question is whether the plaintiff has proven that the Court has personal jurisdiction over the defendant.

"'Personal jurisdiction' is the phrase used to express a court's power to bring a person into its adjudicative process." <u>Noble Sec., Inc. v. MIZ Eng'g, Ltd.</u>, 611 F. Supp. 2d 513, 525 (E.D. Va. 2009) (citing Black's Law Dictionary 857 (7th ed.

1999)). "Federal district courts may exercise such personal jurisdiction 'only to the degree authorized by Congress under its constitutional power to ordain and establish the lower federal courts.'" Id. (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997)). There are two types of personal jurisdiction: general and specific. CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 n.15 (4th Cir. 2009). "General personal jurisdiction ... requires 'continuous and systematic' contact with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." Id. Specific jurisdiction "requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984)).

"[F]or a district court to assert [specific] personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the [forum] state's long arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003).

Virginia's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from" a number of enumerated activities, including "[t]ransacting any business in this Commonwealth," and "[c]ausing tortious injury by an act or omission in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(1) & (3). The United States Court of Appeals for the Fourth Circuit has noted that "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts," even if that act is a mere contractual relationship conducted entirely out-of-state via telephone and mail. English & Smith v. Metzger, 901 F.2d 36, 38-40 (4th Cir. 1990) (quoting Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc., 218 Va. 533, 534-35 (1977)); see also Peninsula Cruise, Inc. v. New River Yacht Sales, Inc., 257 Va. 315, 318-19 (1999) (quoting Nan Ya Plastics Corp. v. DeSantis, 237 Va. 255, 260 (1989)) ("We have held that Code § 8.01-328.1 'is a single-act statue requiring only one transaction in Virginia to confer jurisdiction on our courts.'"). However, "[w]hen jurisdiction over a person is based solely upon [Virginia's long-arm statute], only a cause of action arising from acts enumerated [therein] may be asserted against him." Va. Code § 8.01-328.1(C).

Virginia's long-arm statute has been determined "to extend personal jurisdiction to the extent permissible under the due process clause, [so that] the statutory inquiry merges with the constitutional inquiry." Consulting Eng'rs Corp. v. Geometric, Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (citing Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002)). The due process requirement is satisfied if the defendant has "sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)). In order to establish the existence of sufficient minimum contacts with the forum, a plaintiff must prove that the defendant "'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Furthermore, the defendant's activities or contacts with the forum must be such that he would "reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In accordance with the above standard, the Fourth Circuit has established a three-part test for determining whether sufficient minimum contacts exist. Specifically, a district court is to consider: "'(1) the extent to which the defendant

purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" Geometric, 561 F.3d at 278 (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). The analysis focuses on the quality, not merely the quantity, of the contacts. Carefirst, 334 F.3d at 397. "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." Id. (quoting Burger King, 471 U.S. at 477-78). However, where a defendant has not purposefully availed itself of the privilege of conducting activities in the forum, dismissal for lack of personal jurisdiction is appropriate. Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 302 (4th Cir. 2012) (citing Geometric, 561 F.3d at 273); see also Noble, 611 F. Supp. 2d at 530.

## B. Analysis

As a threshold matter, the Court notes that PEOPLExpress argues only that this Court may exercise specific personal jurisdiction over 200 Kelsey based on its actions with respect to the Brand, Marks, and Plaintiff PEOPLExpress. PEOPLExpress

does not contend that this Court may exercise general personal jurisdiction over 200 Kelsey. On the contrary, PEOPLExpress specifically disclaims the Court's ability to exercise such jurisdiction in its brief in opposition to the instant motion. Accordingly, the Court considers only the question of its specific jurisdiction over 200 Kelsey.

200 Kelsey argues that this Court lacks personal jurisdiction because 200 Kelsey does not have any meaningful contacts with the forum. 200 Kelsey contends that it never purposefully availed itself of the privilege of doing business in Virginia and, accordingly, that haling it into court in this forum would offend traditional notions of fair play and substantial justice. In support of its position, 200 Kelsey has submitted an affidavit from its president, Michael Reich ("Reich"). Reich certifies that 200 Kelsey does not maintain a physical presence in Virginia, does not advertise in Virginia, is not engaged in significant or long-term business activities in Virginia, has no employees or agents in Virginia, and does not have any property, bank accounts, offices, or mailing addresses in Virginia, nor any operations, locations or facilities in Virginia. ECF No. 6-2. Additionally, 200 Kelsey is not incorporated in Virginia (Compl. ¶ 5) and there are no facts suggesting that 200 Kelsey has otherwise conducted business in Virginia. See ECF No. 6 at 8.

In response,[3] PEOPLExpress offers two bases upon which it asserts that this Court may exercise specific personal jurisdiction over 200 Kelsey: (1) 200 Kelsey's "demand"[4] that PEOPLExpress purchase a license for the "PEOPLE EXPRESS" mark constituted an individualized tortious act taken against a resident of the forum, sufficient to give rise to specific jurisdiction of 200 Kelsey; and (2) 200 Kelsey's registration of domain names using the "PEOPLE EXPRESS" mark and subsequent offer to sell such domain names to PEOPLExpress created personal jurisdiction over 200 Kelsey in this forum.

200 Kelsey replies that PEOPLExpress initiated contact with 200 Kelsey outside of Virginia and that all such contact occurred outside of Virginia. Specifically, 200 Kelsey represents that PEOPLExpress's attorney contacted its attorney at his office in Connecticut in January 2012 to express PEOPLExpress's interest in purchasing 200 Kelsey's rights in the "PEOPLE EXPRESS" mark. After some communication back and forth via telephone and email, Reich met with PEOPLExpress President,

---

[3] The Court notes that PEOPLExpress failed to plead personal jurisdiction in its Complaint and that all of PEOPLExpress's arguments in support of this Court's jurisdiction over 200 Kelsey were raised after 200 Kelsey filed its motion to dismiss pursuant to Rule 12(b)(2).

[4] 200 Kelsey does not concede that a demand was made, but in ruling on personal jurisdiction, this Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff . . . ." Combs, 886 F.2d at 676. Therefore, the Court will adopt this characterization for purposes of this motion only.

Michael Morisi ("Morisi"), in New York to discuss PEOPLExpress's interest in the mark. However, the parties could not reach an agreement and no contract was formed. 200 Kelsey argues that its response to PEOPLExpress's interest in purchasing whatever rights it may hold in the "PEOPLE EXPRESS" mark does not constitute purposeful availment of the benefits of doing business Virginia for purposes of establishing personal jurisdiction in this forum, because 200 Kelsey did not initiate the contact, all communications occurred outside the forum, and no contract resulted with PEOPLExpress, the forum party. With respect to PEOPLExpress's second basis for personal jurisdiction, 200 Kelsey argues that PEOPLExpress is not a trademark owner within the meaning of the Lanham Act and, therefore, 200 Kelsey's out-of-forum activities concerning the alleged domain names are insufficient to establish personal jurisdiction over 200 Kelsey in the instant action.

As discussed above, determining whether a court can exercise personal jurisdiction over a defendant is a two-pronged inquiry, focusing both on the long-arm statute of the state in which the district court sits and due process considerations. While these two inquiries merge because Virginia's long-arm statute extends personal jurisdiction to the extent authorized by the Due Process Clause of the Fourteenth Amendment, and the Court therefore need only conduct a constitutional analysis, see

*Geometric*, 561 F.3d at 277, the Court will briefly address its jurisdiction under the Virginia long-arm statute (in light of PEOPLExpress's reliance on two specific provisions of that statute) before turning to the constitutional inquiry. The Court will then address each of the proffered acts of purposeful availment in turn. Ultimately, because it finds that neither act is sufficient to satisfy the first prong of the Fourth Circuit's test, the Court finds that dismissal pursuant to Rule 12(b)(2) is appropriate. *See Tire Eng'g & Distrib.*, 682 F.3d at 302 (citing *Geometric*, 561 F.3d at 273); *see also Noble*, 611 F. Supp. 2d at 530.

### i. Virginia's Long-Arm Statute

PEOPLExpress cites two subsections of Virginia's long-arm statute in support of its argument that this Court may exercise personal jurisdiction over 200 Kelsey. In relevant part, the long-arm statute provides that:

> A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> 3. Causing tortious injury by an act or omission in this Commonwealth.
>
> 4. Causing tortious injury in this Commonwealth to any person by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

16

Va. Code Ann. § 8.01-328.1(A)(1) & (3). In reviewing these provisions in light of the facts before it, the Court finds that neither supports the exercise of personal jurisdiction over 200 Kelsey in this case.

First, to subject a nonresident defendant to personal jurisdiction in Virginia pursuant to § 8.01-328.1(A)(3), PEOPLExpress "must allege 'that one essential act of the alleged tort occurred in Virginia.'" Provident Pharm., Inc. v. Amneal Pharm., LLC, No. 3:08cv393, 2008 WL 4911232, at *3 (E.D. Va. Nov. 13, 2008) (quoting Decisions Insights, Inc. v. Quillen, No. 05-0335, 2005 WL 2757930, at *6 (E.D. Va. Oct. 21, 2005)); see also Brown v. Am. Broad. Co., 704 F.2d 1296, 1300 (4th Cir. 1983). PEOPLExpress has failed to allege that 200 Kelsey committed any act in Virginia. Thus, regardless of whether PEOPLExpress has suffered a tortious injury, this Court may not exercise jurisdiction over 200 Kelsey pursuant to § 8.01-328.1(A)(3) because there are no facts suggesting that any aspect of such tortious injury was caused "by an act or omission in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(3) (emphasis added).

Personal jurisdiction over 200 Kelsey is also not properly exercised pursuant to § 8.01-328.1(A)(4). For this provision of Virginia's long-arm statute to confer jurisdiction, PEOPLExpress must show that (1) 200 Kelsey caused tortious injury in the

Commonwealth by an act or omission outside of the Commonwealth; (2) 200 Kelsey regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth; and (3) PEOPLExpress's cause of action arises from such conduct. See Va. Code Ann. § 8.01-328.1(A)(4). PEOPLExpress has failed to make such showing. Specifically, in arguing this Court's personal jurisdiction over 200 Kelsy, PEOPLExpress relies solely upon allegations of an isolated demand.[5] There are no facts before the Court suggesting the 200 Kelsey regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Virginia. On the contrary, 200 Kelsey has offered affidavits asserting that it has no physical or business presence in the Commonwealth of Virginia. Because PEOPLExpress has failed to offer any evidence or argument as to the second requirement set forth in § 8.01-328.1(A)(4), the Court finds that it may not properly exercise jurisdiction pursuant to this subsection of Virginia's long-arm statute.

---

[5] PEOPLExpress characterizes such demand only as a "license" demand. Compl. ¶ 46, ECF No. 1; see also ECF No. 9 at 4, 7. Although PEOPLExpress summarily argues that an offer to sell a domain name to a trademark owner can create jurisdiction in the trademark owner's domicile, PEOPLExpress does not allege that 200 Kelsey ever made such an offer, as the Court discusses in greater detail below.

Although the Court finds that the proffered subsections of Virginia's long-arm statute do not support a finding of personal jurisdiction over 200 Kelsey in this case, it does note that another subsection may support the exercise of such jurisdiction. Specifically, Section 8.01-328.1(A)(1) provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... transacting any business in this Commonwealth." Va. Code Ann. 8.01-328.1(A)(1). Virginia Courts have repeatedly held that § 8.01-328.1 "is a single-act statute requiring only one transaction in Virginia to confer jurisdiction." Peninsula Cruise, 257 Va. at 319 (citing cases). Thus, the purpose of the statue, to the extent one of its provisions is implicated, "is to assert jurisdiction over nonresidents who engage in some purposeful activity in this state to the extent permissible under the due process clause." Id. (citations omitted). And, thus, the "statutory inquiry merges with the constitutional inquiry." Geometric, 561 F.3d at 277. Accordingly, with § 8.01-328.1(A)(1) in mind, the Court turns to the constitutional inquiry, specifically, the two acts that PEOPLExpress alleges constitute purposeful availment.

### ii. Due Process Requirements

As described above, the Fourth Circuit has set forth a three-prong test for determining whether a court has personal

jurisdiction over a nonresident defendant. For this Court to find that it has such jurisdiction over 200 Kelsey, it must consider (1) the extent to which 200 Kelsey purposefully availed itself of the privilege of conducting activities in Virginia; (2) whether PEOPLExpress's claims arise out of those activities; and (3) whether this Court's exercise of personal jurisdiction is constitutionally reasonable. See Geometric, 561 F.3d at 278. However, because the Court finds that none of 200 Kelsey's actions rise to the level of purposeful availment, it ultimately finds that dismissal is appropriate. Tire Eng'g & Distrib., 682 F.3d at 302 (citing Geometric, 561 F.3d at 273); see also Noble, 611 F. Supp. 2d at 530.

### a. License Demand as Purposeful Availment

PEOPLExpress's primary contention is that, by demanding that PEOPLExpress purchase a license to the "PEOPLE EXPRESS" mark, 200 Kelsey purposefully directed its activities at a resident of Virginia in a manner sufficient to give this Court personal jurisdiction over 200 Kelsey for any cause of action arising out of such contact.

PEOPLExpress is correct that "[e]ven a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact." Carefirst, 334 F.3d at 397. The Supreme Court has routinely held that "[s]o long as it creates a 'substantial connection' with the forum, even a single

20

act can support jurisdiction" over a nonresident defendant. Burger King, 471 U.S. at 475 n.18 (quoting McGee v. Int'l Life Ins. Co., 335 U.S. 220, 223 (1957)). But, "'some single or occasional acts' related to the forum may not be sufficient to establish [such] jurisdiction 'if their nature and quality and circumstances of their commission' create only an 'attenuated' affiliation with the forum.'" Id. (quoting Int'l Shoe, 326 U.S. at 318). The Supreme Court has observed that the "purposeful availment" requirement is designed to "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King, 471 U.S. at 475 (internal citations omitted). Accordingly:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (internal quotation marks omitted). Thus, jurisdiction over a nonresident defendant is proper "where the contacts [at issue] proximately result from actions by the defendant himself that

create a 'substantial connection' with the forum state."[6]  Id.
(quoting McGee, 335 U.S. at 223) (emphasis in original).
Because "[j]urisdiction may not be manufactured by the conduct
of others," the Court looks to "those [contacts] actually
generated by the defendant" when determining whether 200
Kelsey's "conduct and connection with [Virginia]" is such that
it should have reasonably anticipated being haled into this
Court for the conduct complained of in this action.  Chung v.
NANA Dev. Corp., 783 F.2d 1124, 1127 (4th Cir. 1986).
Ultimately, the Court considers whether the alleged license
demand, as a single act, is sufficient to warrant this Court's
exercise of specific personal jurisdiction over 200 Kelsey in
this action under the Due Process Clause.

The Fourth Circuit has summarized various, nonexclusive
factors that district courts consider when evaluating whether a
defendant has purposefully availed himself of the privileges of
conducting business in the forum State.  Such factors include,
but are not limited to:

---

[6] Although this standard requires a "substantial connection" with the
forum state, it is distinct from the standard applicable to general
personal jurisdiction, by which a State exercises jurisdiction over a
party "in a suit not arising out of or related to the defendant's
contacts with the forum." Burger King, 471 U.S. at 473 n.15 (quoting
Helicopteros, 466 U.S. at 414 n.9) (emphasis added). The "substantial
connection" required to support the exercise of specific jurisdiction
refers to the connection required between the defendant's activities
and the forum, when those activities serve as the basis for the suit
in which such jurisdiction is exercised. See id. (quoting McGee, 335
U.S. at 223).

> (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum state in the forum state regarding the business relationship; and (7) the nature, quality and extent of the parties communications about the business being transacted.

Geometric, 561 F.3d at 278 (internal citations omitted) (numbering added). There are no facts before the Court that 200 Kelsey maintains offices or agents in Virginia, that it owns property in Virginia, or that it has deliberately engaged in significant or long-term business activities in Virginia. Accordingly, the first, second, and fourth factors weigh against a finding of purposeful availment. Similarly, both parties agree that they were unable to reach an agreement concerning the "PEOPLE EXPRESS" mark. Since no contract exists between the parties, the fifth factor weighs neither in favor nor against a finding of purposeful availment. Further, there are no facts suggesting that 200 Kelsey ever made in-person contact with PEOPLExpress in Virginia. On the contrary, the only meeting between the parties occurred outside of Virginia, in New York. Therefore, the sixth factor weighs against a finding of purposeful availment.

The third factor likewise weighs against a finding of purposeful availment. Specifically, both PEOPLExpress and 200 Kelsey agree (although with varying degrees of emphasis), that 200 Kelsey's license demand was in response to an inquiry initiated by PEOPLExpress after it learned of 200 Kelsey's prior pending intent-to-use application. There are no facts before the Court suggesting that 200 Kelsey ever "reached into" Virginia to solicit or initiate business. Geometric, 561 F.3d at 278. On the contrary, PEOPLExpress reached outside of Virginia to initiate contact with 200 Kelsey concerning its pending application. The Fourth Circuit has expressly held that, although it may not treat such fact as dispositive, a court may accord "special weight" to the fact that one party initiated contact with the other. CFA Inst., 551 F.3d at 295 n.17; see also Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000) (finding nonresident defendant's contacts insufficient to confer personal jurisdiction, in part, because the plaintiff had initiated the contractual relationship). In light of the Court's findings that none of the first six factors suggest 200 Kelsey purposefully availed itself of the privileges of conducting business in Virginia, the Court does accord significant weight to the fact that the complained of demand occurred not only

outside of Virginia, but solely in response to contact initiated by PEOPLExpress.

This leaves the seventh and final factor, the nature, quality, and extent of the communications between PEOPLExpress and 200 Kelsey. _Geometric_, 561 F.3d at 278. As a threshold matter, the Court observes that PEOPLExpress has failed to plead any facts concerning its communications with 200 Kelsey, with the exception of its general allegation in Paragraph 46 of the Complaint that: "When approached by Plaintiff to attempt to resolve the matter of the blocking intent-to-use application that [200] Kelsey ha[d] filed for PEOPLE EXPRESS, [200] Kelsey refused to consider anything other than a 'license'...." Compl. ¶ 46, ECF No. 1. PEOPLExpress likewise failed to describe any other communications with 200 Kelsey in its brief in opposition to 200 Kelsey's motion to dismiss. Accordingly, the Court looks to 200 Kelsey's proffers concerning such communication when evaluating the seventh _Geometric_ factor.[7] 200 Kelsey represents that its attorney, Edmund J. Ferdinand, III ("Ferdinand"), received one voicemail message at his office in Connecticut from

---

[7] The Court may properly consider such proffers when evaluating whether PEOPLExpress has made a prima facie showing of a sufficient jurisdictional basis to survive 200 Kelsey's challenge. _See_ _PBM_ _Prods._, 2009 U.S. Dist. LEXIS 93312, at *4. However, "the court must construe all relevant ... allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." _Id._

PEOPLExpress's attorney, Duncan Byers ("Byers"), and that Ferdinand and Byers exchanged emails concerning PEOPLExpress's interest in purchasing any rights 200 Kelsey may have in the "PEOPLE EXPRESS" mark. ECF No. 10, Ex. 1-2. Additionally, Ferdinand exchanged emails with Morisi regarding Morisi's desire to meet with Reich in New York. 200 Kelsey represents that this meeting did in fact take place. Thus, the Court has before it one voicemail from PEOPLExpress to 200 Kelsey, a series of emails exchanged between the two, and one meeting occurring outside of Virginia. Even construing these communications in the light most favorable to PEOPLExpress, the Court finds that they do not support a finding that 200 Kelsey purposefully directed its efforts toward PEOPLExpress.

For these reasons, none of the Geometric factors support a finding of purposeful availment based on the alleged license demand. Although these factors are not exclusive, the Court finds that, in viewing the facts before it as a whole and in the light most favorable to PEOPLExpress, there is simply not enough to support a finding that 200 Kelsey purposefully availed itself of the privilege of doing business in Virginia. Brief email exchanges and telephone conversations, such as those that occurred here, are, alone, "qualitatively insufficient to show purposeful availment." Tire Eng'g & Distrib., 682 F.3d at 302 (describing the Fourth Circuit's analysis in Geometric

concerning a nonresident defendant who "maintained no offices in Virginia" and had never traveled there, but who had "exchanged four brief emails and had several phone conversations with the Virginia-based plaintiff"). As in Geometric, the conduct of which PEOPLExpress complains—200 Kelsey's intent-to-use applications and its alleged license demand—occurred entirely outside Virginia. Geometric, 561 F.3d at 282. The Court finds that 200 Kelsey's alleged contacts are simply too attenuated to support this Court's exercise of specific personal jurisdiction over 200 Kelsey in this case. PEOPLExpress cannot, through its own unilateral inquiry and solicitation of information, support a finding to the contrary. See Burger King, 471 U.S. at 475 (quoting Hanson, 357 U.S. at 253).

b.   Alleged Offer to Sell Domain Name as Purposeful Availment

In addition to its primary contention that 200 Kelsey's license demand was sufficient to create specific personal jurisdiction over 200 Kelsey in Virginia, PEOPLExpress summarily argues that "a person who registers a trademark as a domain name and offers that domain name for sale to a trademark owner ... is subject to personal jurisdiction in the trademark owner's domicile." ECF No. 9 at 6 (citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322-24 (9th Cir. 1998)). Before briefly addressing the merits of this argument, the Court observes that PEOPLExpress has not pled or otherwise alleged any

27

facts indicating that 200 Kelsey ever offered to sell domain names to PEOPLExpress. Rather, PEOPLExpress simply alleges that 200 Kelsey registered two domain names using the Brand without subsequently making a marketplace use of those domains.[8] Compl. ¶¶ 51-52, ECF No. 1. Accordingly, even if the Court could exercise specific personal jurisdiction over 200 Kelsey on the basis of such offers alone, there are no facts alleged in the Complaint or briefings indicating that any such offers were ever made. Additionally, the Ninth Circuit case cited by PEOPLExpress requires that the nonresident "engage[] in a scheme to register [another's] trademarks as his domain names for the purpose of extorting money from [the trademark owner]." Panavision Int'l, 141 F.3d at 1322. Accordingly, even if such a rule applies in this Circuit (a question the Court does not reach), PEOPLExpress could not invoke it as a basis for jurisdiction, as PEOPLExpress, by its own pleading, affirms that it is not currently and has never been the owner of the mark at

---

[8] PEOPLExpress generally argues that 200 Kelsey was engaged in a "scheme to extort money" from PEOPLExpress. ECF No. 9 at 8. However, the only facts alleged supporting the existence of such scheme concern the alleged "license" demand. Compl. ¶ 46, ECF No. 1; see also ECF No. 9 at 4, 7. In its Complaint, PEOPLExpress alleges that, in other such schemes, 200 Kelsey registered domain names using marks that it had reserved in intent-to-use applications with the intent to extort money from others interested in such marks. Compl. ¶ 48, ECF No. 1. However, PEOPLExpress fails to allege any facts suggesting that, in this case, 200 Kelsey did anything more than register two domain names in 2005 and 2009. Nowhere does PEOPLExpress claim that 200 Kelsey subsequently offered to sell those domain names to or otherwise extort money from PEOPLExpress.

issue.   Accordingly,  the  Court  finds  no  basis  for  exercising
specific    personal    jurisdiction    over    200    Kelsey    under
PEOPLExpress's alternative theory.

## V. CONCLUSION

The  Court  finds  that  PEOPLExpress  has  failed  to  show  that
200 Kelsey purposefully availed itself of the privilege of doing
business  in  Virginia  or  otherwise  purposefully  directed  its
activities  at  PEOPLExpress,  a  resident  of  Virginia.    Because
PEOPLExpress  has  failed  to  make  a  prima  facie  showing  of  this
first  element  of  the  jurisdictional  analysis,  as  set  forth  in
the  Rule  12(b)(2)  analysis  above,  the  Court  concludes  that  it
does  not  have  personal  jurisdiction  over  200  Kelsey  in  this
action.    As  a  result,  the  Court  need  not  address  200  Kelsey's
alternative motions under Rules 12(b)(6) and 12(f).

For  all  of  the  foregoing  reasons,  200  Kelsey's  motion  to
dismiss  pursuant  to  Rule  12(b)(2)  is  **GRANTED.** While  the  Court
finds  that  personal  jurisdiction  over  200  Kelsey  wanting,  it
reaches    no    conclusion    as    to    the    substantive    aspects    of
PEOPLExpress's  Complaint.    PEOPLExpress  is  therefore  free  to
take whatever action it sees fit in a more appropriate forum.

The  Clerk  is  **REQUESTED**  to  send  a  copy  of  this  Opinion  and
Order to counsel of record for the parties.

**IT IS SO ORDERED.**

/s/ [signature]

Mark S. Davis
United States District Judge

Norfolk, Virginia
February 5 , 2013